***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all times relevant to this claim. *Page 2 
3. Plaintiff was out of work recuperating from left shoulder surgery from June 8, 2006 until September 12, 2006.
4. The average weekly wage is sufficient to yield the maximum compensation rate for 2006, which is $730.00 per week.
5. Plaintiff received the following salary continuation or short-term disability gross benefit checks on the following dates: $1,296.85 on June 15, 2006; $1,995.93 on June 30, 2006; $1,672.39 on July 15, 2006; $1,672.39 on July 31, 2006; $1,476.67 on August 15, 2006; $1,134.14 on August 31, 2006; and $1,134.14 on September 15, 2006.
6. The parties stipulated into evidence the following:
 7. Stipulated Exhibit # 1, a Pre-Trial Agreement, as modified and initialed by the parties;
 8. Stipulated Exhibit # 2, Industrial Commission Forms;
 9. Stipulated Exhibit # 3, plant medical records;
 10. Stipulated Exhibit # 4, medicals of Dr. Gilbert;
 11. Stipulated Exhibit # 5, physical therapy records;
 12. Stipulated Exhibit # 6, defendant-employer attendance records for plaintiff;
 13. Stipulated Exhibit # 7, short term disability replacement documentation; and
 14. Stipulated Exhibit # 8, Quality Assurance Technician and Technical Support Analyst, position description.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years of age. Plaintiff began working for defendant-employer in 1992. At the time his shoulders started bothering him; plaintiff was working as a C-clamp Operator and had been performing this job for about a year. Plaintiff is left-hand dominant and his left shoulder was more painful than his right shoulder.
2. The C-clamp Operator job is part of quality control, wherein the operator performs various measurements on the tires to make sure that they are in conformity with company standards. Plaintiff worked as a C-clamp Operator six days a week for eight hours per day.
3. In an eight-hour shift, plaintiff performed multiple measurements on each of approximately eighty tires. These tires included both passenger and truck tires. The passenger tires weighed between 15 and 30 pounds and the truck tires weighed between 40 and 50 pounds.
4. For each of the eighty tires, plaintiff performed six steps, all of which involved the use of the arms at, above, or around shoulder level. The first step in the inspection process involved removing the tire from a stack by reaching either up above shoulder level or at shoulder level, depending on where the tire was in the stack. Plaintiff's arms would extend out while reaching to take the tire from the stack.
5. The second step in the inspection process involved lifting the tire up onto a turret, similar to a pole with a hook on it. When lifting the tire up onto the turret, plaintiff's arms were at shoulder level.
6. The third step in the inspection process involved measuring the thickness of the tire tread with a large C-clamp tool. Both of plaintiff's arms were extended out while *Page 4 
performing this step. He held the large C-clamp tool with his left arm, which was extended at shoulder level for about a minute while holding this tool. The C-clamp tool weighs about 4 pounds. Plaintiff's right arm would be held out slightly below his left arm to help him support the tire while he took the measurement.
7. The fourth step in the inspection process was to measure the bead of the tire with the small C-clamp tool. Plaintiff held this tool with his right arm and controlled the movement of the tire with his left arm. Both arms were at shoulder or chest level for about 45 seconds while doing this step.
8. The fifth step in the inspection process was to lift the tire off the turret and put it on a scale. Plaintiff used both arms to lift the tire up off the turret, while his arms were above shoulder level to remove the tire from the hook. Plaintiff then stacked the tire on an inactive conveyor belt, which is about waist high, in stacks of approximately 5 tires each.
9. The sixth step in the inspection process occurred after plaintiff completed steps one through five for approximately twenty or thirty tires. Plaintiff would then take each tire that was stacked on the inactive conveyor belt (in stacks of about 5 tires each) and move each tire to the active conveyor belt. This involved using both arms overhead to lift the fifth and fourth highest tires off the stack and using both arms at shoulder level to lift the third highest tire off the stack. Plaintiff would then toss each tire onto the active conveyor belt, using both arms.
10. On March 20, 2006, plaintiff presented to Dr. Stanley Gilbert, an orthopaedic surgeon, for bilateral shoulder pain. Dr. Gilbert diagnosed plaintiff with impingement syndrome in both shoulders. *Page 5 
11. Dr. Gilbert opined, and the Full Commission so finds, that plaintiff's job duties as a C-clamp Operator placed him at increased risk for developing bilateral impingement syndrome as compared with members of the general public not equally exposed.
12. Dr. Gilbert has opined, and the Full Commission so finds, that plaintiff's job duties as a C-clamp Operator made a significant, or noteworthy, contribution to the development of his bilateral impingement syndrome.
13. Plaintiff was unable to work in any capacity as a result of his impingement syndrome from June 8, 2006 until September 12, 2006. Plaintiff underwent surgery for his left shoulder on June 8, 2006 and he was not released to return to work in any capacity until September 12, 2006.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. For an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), it must be (1) characteristic of persons engaged in the particular trade or occupation in which the [plaintiff] is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [plaintiff's] employment." Rutledge v. Tultex Corp./Kings Yarn,308 N.C. 85, 93; 301 S.E.2d 359, 365 (1983) [quoting Hansel v. ShermanTextiles, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981) citingBooker v. Duke Med. Ctr., 297 N.C. 458,468,475; 256 S.E.2d 189,196,200 (1979)]. *Page 6 
2. In this case, the greater weight of the medical evidence of record, including Dr. Stanley K. Gilbert's testimony, when considered in its entirety is sufficient to establish the necessary causal relationship for plaintiff's condition to be compensable as an occupational disease and to prove plaintiff's employment exposed him to a greater risk of contracting bilateral impingement syndrome relative to the general public. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center,supra. Therefore, plaintiff's bilateral impingement syndrome is a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff was totally disabled as a result of his compensable occupational disease from June 8, 2006 until September 12, 2006. Plaintiff is entitled to disability benefits in the amount of $730.00 per week during the period of his total disability. N.C. Gen. Stat. §§ 97-2(9); 97-29; Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982); Russell v. Lowes Product Distribution,108 N.C. App. 762,425 S.E.2d 454 (1993).
4. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff total disability compensation at the rate of $730.00 per week from June 8, 2006 until September 12, 2006. As this compensation has accrued, it shall be paid in a lump sum. *Page 7 
2. A reasonable attorney's fee of twenty-five percent (25%) of the total compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be paid directly to plaintiff's counsel. As all of this compensation has accrued, it shall be paid in a lump sum.
3. After deduction of the attorney's fee awarded above, defendants are entitled to take the following credits: (a) for the weeks during which the gross salary continuation or disability benefits were greater than the weekly compensation rate, defendants are entitled to a credit in the amount of 75% of the maximum compensation rate, or 75% of $730.00, which is a credit in the amount of $547.50. Since the compensation rate is $730.00, this means that defendants owe $182.50 per week, which is to be paid to plaintiff's counsel as awarded above; (b) for the weeks during which the gross disability benefits were less than the weekly compensation rate, defendants are entitled to a credit in the amount of 75% of the gross disability benefits paid. The amount of gross disability benefits paid each week from August 16, 2006 to September 12, 2006 was $567.07 per week. When reduced by 25%, defendants are left with a credit of $425.30 per week. Since the compensation rate is $730.00, this means that defendants owe $304.70 per week. Out of the weekly amount of $730.00, plaintiff's counsel shall be paid $182.50, as awarded above, and plaintiff shall be paid $122.20.
4. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his compensable occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
5. Defendants shall pay the costs of this proceeding.
 This the __ day of May 2008. *Page 8 
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER